## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| KAISER ALUMINUM CORP., et al., | ) | Jointly Administered |
| Debtors. | ) | Bankruptcy Case No. 02-10429 |
| | ) | (JKF) |
| LAW DEBENTURE TRUST COMPANY OF NEW YORK, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-00088 JJF |
| | ) | |
| KAISER ALUMINUM CORP., et al., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |
| LIVERPOOL LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Appellant, | ) | Civil Action No. 06-00160 JJF |
| | ) | (Administratively Consolidated |
| v. | ) | with 06-00088 JJF) |
| | ) | |
| ALPART JAMAICA, INC., et al., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

### ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

### REPLY BRIEF OF APPELLANT LAW DEBENTURE TRUST
### COMPANY OF NEW YORK

Evan D. Flaschen, Esq.
Gregory W. Nye, Esq.
William C. Heuer, Esq.
Kate K. Simon, Esq.
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT 06103-3178
Tel.:    (860) 240-2700

Francis A. Monaco, Esq. (#2078)
Joseph J. Bodnar, Esq. (#2512)
MONZACK AND MONACO, P.A.
P.O. Box 2031
1201 North Orange Street, Suite 400
Wilmington, DE 19899-2031
Tel.:    (302) 656-8162

*Counsel to Appellant Law Debenture Trust Company of New York*

Dated:  June 22, 2006

TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. STANDARD OF REVIEW ................................................................................................... 2

III. ARGUMENT ...................................................................................................................... 3

    A.    PAROL EVIDENCE OF THE PURPORTED INTENT OF KAISER'S
           OFFICER, LAWYER AND UNDERWRITER HAS IMPROPERLY
           CONSUMED AND CONTROLLED THIS CASE............................................................... 3

    B.    INTERPRETATION OF THE INDENTURE THROUGH THE FILTER
           OF SELF-SERVING STATEMENTS OF INTENT HAS RESULTED
           IN AN UNNATURAL READING OF UNAMBIGUOUS INDENTURE
           TERMS............................................................................................................................ 6

           1.    Accepting the Parol Evidence Results in a Reading of the 1993
                Indenture that Renders Certain Provisions Superfluous....................................... 6

           2.    The Parol Evidence Forces a Strained Construction of "Senior
                Indebtedness"...................................................................................................... 10

           3.    Acceptance of the Parol Evidence Ignores the Nature of Public
                Indentures .......................................................................................................... 15

    C.    THE BANKRUPTCY COURT'S CONSIDERATION OF EXTRINSIC
           AND PAROL EVIDENCE REQUIRES REVERSAL .................................................... 17

IV. CONCLUSION ................................................................................................................... 18

## TABLE OF AUTHORITIES
### FEDERAL CASES

Citizens Fin. Group v. Citizens Nat'l Bank, 383 F.3d 110 (3d Cir. 2004)......................................3

De Laval Turbine v. West India Indus., 502 F.2d 259...............................................................17

Fed. Deposit Ins. Corp. v. Prann, 694 F. Supp. 1027 (D.P.R. 1988)...........................................15

Forrest v. Beloit Corp., 424 F.3d 344 (3d Cir. 2005) ................................................................3

Gen. Elec. v. Compagnie Euralair S.A., 945 F. Supp. 527 (S.D.N.Y. 1996)..........................7, 13

In re Envirodyne Indus., 29 F.3d 301 (7th Cir. 1994) ................................................................5

In re Leasing Consultants, 2 B.R. 165 (E.D.N.Y. 1980) ...........................................................12

In re Netia Holdings, 278 B.R. 344 (Bankr. S.D.N.Y. 2002) ......................................................4

John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co., 717 F.2d 664 (2d Cir.
    1983)............................................................................................................................14

Metro. Life Ins. Co. v. RJR Nabisco, 716 F. Supp. 1504 (S.D.N.Y. 1989)..............................5-6

PMI Investment v. Rose (In re Prime Motor Inns), 167 B.R. 261
    (Bankr. S.D. Fla. 1994)...................................................................................5, 7, 8, 9

Shannon-Vail Five Inc. v. Bunch, 270 F.3d 1207 (9th Cir. 2001).............................................15

Shaw Group Inc. v. Triplefine Int'l, 322 F.3d 115 (2d Cir. 2003) ........................................7, 13

United States v. Local 560 of Int'l Bhd. of Teamsters, 780 F.2d 267 (3d Cir. 1985, *as
    amended* Feb. 3, 1986)...................................................................................................17

Whetstone Candy Co. v. Kraft Foods, 351 F.3d 1067 (11th Cir. 2003) ......................................8

Zim v. West. Publ'g Co., 573 F.2d 1318 (5th Cir. 1978)........................................................5, 8

### STATE CASES

Chester Music Ltd. v. Schott Musik Int'l (In re Estate of Stravinsky), 4 A.D.3d 75 (N.Y.
    App. Div. 2003) ..............................................................................................................4

Excellus Health Plan, Inc. v. Serio, 757 N.Y.S.2d 345 (N.Y. App. Div. 2003) ........................14

Fehr Bros. Inc. v. Scheinman, 121 A.D.2d 13 (N.Y. App. Div. 1986).......................................15

Sargent v. Halsey, 348 N.Y.S.2d 661 (N.Y. Sup.Ct. 1973), *aff'd*, 42 A.D.2d 375 (N.Y.
    App. Div. 2d Dep't 1973)................................................................................................11

Trump-Equitable Fifth Ave. Co. v. H.R.H. Constr. Corp., 485 N.Y.S.2d 65 (N.Y. App. Div. 1985), *aff'd*, 66 N.Y.2d 779 (1985)......................................................................................... 7, 13

William C. Atwater & Co. v. Panama R. Co., 159 N.E. 418 (N.Y. 1927) .................................................... 4

## DOCKETED CASES

Purcell v. Flying Tiger Line, No. 82-3505 (S.D.N.Y. Jan. 12, 1984).......................................................... 6

## MISCELLANEOUS

AMERICAN BAR FOUNDATION, COMMENTARIES ON MODEL DEBENTURE INDENTURE PROVISIONS 567 (1971) ........................................................................................................... 8, 14

JAMES E. SPIOTTO, DEFAULTED SECURITIES: THE PRUDENT INDENTURE TRUSTEE'S GUIDE XVII-14 (Am. Bankers Ass'n 1990) ................................................................................ 13

MARK B. TRESNOWSKI & GERALD T. NOWAK, THE HIGH YIELD OFFERING: AN ISSUER'S PERSPECTIVE A-9 (Merrill Corp. 2004) ....................................................................... 15

MERRIAM-WEBSTER'S DICTIONARY OF LAW (1996) .............................................................................. 14

## I. PRELIMINARY STATEMENT

The Bankruptcy Court based its decision below in substantial part on its conclusion that "clause (ii) of the definition of [Senior Indebtedness] provides that 'Obligations' shall constitute Senior Indebtedness when, *inter alia*, so designated in writing by the Company." Guaranty Decision[1] at 10 (D.I. 8008). LDTC asserts that this conclusion was an error of contract interpretation as a matter of law. LDTC's Opening Brief at 15-18 (D.Ct. D.I. 10). <u>Appellees were forced to agree with LDTC that the Bankruptcy Court erred</u>, although they buried their agreement on page 28 of their brief and euphemistically referred to "[t]he bankruptcy court's slight misreading." Appellees' Br. at 28 (D.Ct. D.I. 14).

The Bankruptcy Court supported its decision by relying extensively on the deposition testimony of Kaiser's CFO, Kaiser's underwriter, and Kaiser's lawyer. *See* Guaranty Decision *passim*. LDTC strenuously objected to the Bankruptcy Court's reliance on this parol evidence and other extrinsic evidence, not merely because such "evidence" was inadmissible as a matter of law, but also because it was inherently biased and unreliable – each of the deponents will be sued if LDTC prevails in this litigation – and for the many other specific reasons identified at length in LDTC's Evidentiary Objections (D.I. 6759). *See* LDTC's Opening Brief at 25-34. Appellees' belief that, in order for them to prevail, the Bankruptcy Court must rely on parol and other extrinsic evidence is manifest: the first four pages of their brief rely almost entirely on what Kaiser's CFO, underwriter and lawyer claim to have "intended" when they drafted the 1993 Indenture, and overall <u>Appellees discuss parol and/or other extrinsic evidence on well more that half of the pages of their brief.</u> *See* Appellees' Br. at 1-4 & *passim*.

If a contract is unambiguous, then the plain language of the contract controls and there is no need to resort to extrinsic evidence. Appellees pay lip service to this rule, but the simple fact

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Brief of Appellant Law Debenture Trust Company of New York ("**LDTC's Opening Brief**"), dated May 3, 2006.

of the matter is that Appellees admit that the Bankruptcy Court erred in the very premise of its decision when it wrongly imported "Obligations" into clause (ii) of the definition of "Senior Indebtedness." In an effort to deflect attention from this fundamental misreading of the plain language of the 1993 Indenture, Appellees throw against the wall numerous other tortured contractual interpretation arguments in the hope that one of them will stick. After cutting through it all, their bottom-line argument is that the parol and other extrinsic evidence should actually control the interpretation of the 1993 Indenture – if the underwriter says "this is what I meant," then the 1993 Indenture must be read to mean what the underwriter says. To quote Appellees themselves:

> As applied to this case, the uncontroverted evidence that the Subordinated Notes and Guarantees were always <u>intended and understood</u> to be fully subordinated debt <u>make it improper to construe any term in the Subordinated Indenture in a way that contradicts that purpose.</u>

Appellees' Br. at 45 (emphasis added).

In other words, Appellees urge this Court to look to inadmissible and inherently biased and unreliable deposition testimony *first* (and they spend the majority of their brief discussing that testimony and other extrinsic evidence), and then argue that the 1993 Indenture can only be interpreted in a manner consistent with supposed "intentions" and "understandings" that are not in the 1993 Indenture itself. This simply is not what the law provides, and were it to be the law, then bondholders could never be entitled to rely on the plain language of their indenture; they would also be required to quiz the issuer's CFO, the issuer's underwriter and the issuer's lawyer to make sure they knew "what was really intended and understood," rather than simply "what was actually said in the indenture."

## II. STANDARD OF REVIEW

At the outset, it must be reiterated that the standard of review to be applied by this Court in reviewing the Bankruptcy Court's decision to consider parol and extrinsic evidence is plenary, not for an abuse of discretion as asserted by Appellees. Appellees' Br. at 18. In the Third

Circuit, when an evidentiary issue turns on the interpretation of substantive state law, as it does here, plenary review applies. *Forrest v. Beloit Corp.*, 424 F.3d 344, 349 (3d Cir. 2005) ("[T]he propriety of the District Court's interpretations of substantive state law [with regard to evidentiary issues] are subject to plenary review."); *see also Citizens Fin. Group v. Citizens Nat'l Bank*, 383 F.3d 110, 132-33 (3d Cir. 2004) (standard of review is plenary where trial court's admission of evidence was based on interpretation of Federal Rules of Evidence). Thus, this Court need not, and indeed should not, give deference to the Bankruptcy Court's decision to admit parol and extrinsic evidence under New York law.

## III. ARGUMENT

### A.    PAROL EVIDENCE OF THE PURPORTED INTENT OF KAISER'S OFFICER, LAWYER AND UNDERWRITER HAS IMPROPERLY CONSUMED AND CONTROLLED THIS CASE

Parol evidence of the supposed intent of Kaiser's chief financial officer, counsel and underwriter -- in other words, Kaiser and the people *it* hired -- purportedly to subordinate payments on the 1993 Note Guarantees to later issued guarantees, has been a central theme of this case. This is made plain by the opening pages of the Appellees' Brief, which focus almost exclusively on parol evidence, as well as in Appellees' bold assertion that the 1993 Indenture simply cannot be interpreted in a manner contradictory to what Kaiser intended, regardless of the fact that what Kaiser supposedly intended is not expressed in the 1993 Indenture itself.

As LDTC demonstrated in its Opening Brief (at 25-26), it is black letter law of contract interpretation that extrinsic evidence is inadmissible unless and until a determination has been made that the contract is ambiguous. Yet, the Bankruptcy Court heard and relied upon parol evidence without first making a threshold finding of ambiguity. Compounding this error, the Bankruptcy Court did not rule upon LDTC and Liverpool's specific Evidentiary Objections (on numerous grounds, including relevance, hearsay, improper foundation, and improper expert opinion) to the introduction of parol evidence at trial. Worse still, the Bankruptcy Court ignored the inherent unreliability of the deponents' statements. Most importantly, the Bankruptcy Court's

obvious misreading of the plain terms of the 1993 Indenture can only be attributed to the improper consideration of the parol evidence of intent unexpressed in the 1993 Indenture. Even Appellees acknowledge that the Bankruptcy Court's analysis was flawed. Appellees' Br. at 28.

Rather than address the fundamental and settled propositions of law set forth in LDTC's Opening Brief (at 25-28), Appellees attempt to justify their focus and the Bankruptcy Court's reliance upon parol evidence by characterizing it as evidence of "surrounding circumstances." Under the rule argued by Appellees, extrinsic evidence must *always* be admissible: (i) if the contract is clear, it is admissible to "confirm" intent, and (ii) if the contract is ambiguous, it is admissible to construe its terms. Moreover, what Appellees have placed in the record are nothing more than self-serving statements of what Kaiser and the professionals it hired claim to have intended, which simply cannot be considered as evidence of "surrounding circumstances."

To the contrary, in those specific instances where evidence of "surrounding circumstances" is admissible under New York law, it clearly does not include parol evidence of intent of the parties:

> Whatever may be the law with respect to the right to look to surrounding circumstances to divine intent where contractual language is ambiguous, this Court does not believe that it has a license to disregard the language of a contract when it is clear and unambiguous. . . . Under the circumstances here, it would be grossly inappropriate for this Court to disregard the clear language in the contract, and engraft upon it terms that its original drafters did not include.

*In re Netia Holdings*, 278 B.R. 344, 355-56 (Bankr. S.D.N.Y. 2002) (applying NY contract law). Rather, New York's allowance of "surrounding circumstances" is limited to consideration of the context in which an agreement was formed "in the light of the obligation as a whole and the intention of the parties *as manifested thereby*." *See William C. Atwater & Co. v. Panama R. Co.*, 159 N.E. 418, 419 (N.Y. 1927) (emphasis added). Case law is clear that "surrounding circumstances" is not a concept that is at all in conflict with the general principles of New York contract interpretation, including the four-corners rule. *See, e.g., Atwater*, 159 N.E. at 419; *Chester Music Ltd. v. Schott Musik Int'l (In re Estate of Stravinsky)*, 4 A.D.3d 75, 81-82 (N.Y.

App. Div. 2003); *PMI Investment v. Rose (In re Prime Motor Inns)*, 167 B.R. 261, 279-80 (Bankr. S.D. Fla. 1994) (applying New York law).

The Bankruptcy Court's emphasis on the one-sided parol evidence in this case is particularly troubling since the individuals making the statements relied upon are highly motivated to say what Kaiser (who hired them and remains in privity of contract with them) wants them to say -- they may well be sued if the 1993 Indenture does not say what they "intended" it to say.[2] Indeed, Kaiser's investment banker acknowledged as much. Deposition of Theodore Sands at 61-62 ("If it was in fact that case [that the representations to 94/96 Noteholders that they would be senior were false,] then it seems to me that we would have to look at counsel for both sides and the lead underwriter. I'd just caution you that it wouldn't be our total responsibility."). Notably, Kaiser could sue its underwriter, while the 1993 Noteholders cannot since they are not in privity of contract. Yet, Appellees argue that Kaiser's underwriter negotiated for the benefit of the 1993 Noteholders. This argument is self-serving and disingenuous. Further, neither the Bankruptcy Court nor Appellees cited to a single decision, article or other independent opinion to support the proposition that insider testimony should be considered in interpreting a public indenture. *Cf. In re Envirodyne Indus.*, 29 F.3d 301, 305 (7th Cir. 1994) (rejecting the use of "self-serving testimony or documents . . . purporting to show that the parties didn't mean what they said in the written contract"); *Zim v. West. Publ'g Co.*, 573 F.2d 1318, 1322-23 (5th Cir. 1978) (rejecting opinion of lawyer who negotiated the contract); *Metro. Life Ins. Co. v. RJR Nabisco*, 716 F. Supp. 1504, 1514 (S.D.N.Y. 1989) (rejecting "the opinions

---

[2] The Subsidiary Plans generally release all possible "Claims" against "any of the Debtors' former directors, *officers*, employees, agents, advisors, *attorneys*, accountants, *underwriters*, *investment bankers* or other representatives of the Debtors . . . *except* for such Claims or rights based on . . . if the holders of the [1993 Note Guarantees] are determined . . . to be entitled to a distribution in respect of such Claims, acts or omissions of any such person related to or giving rise to the circumstances underlying any of the Contractual Subordination Disputes." Subsidiary Plans at § 4.1(b) (emphasis added). In other words, if LDTC prevails, Appellees will be free to sue the very persons who made the Declarations and Depositions, notwithstanding the otherwise general releases set forth in the Subsidiary Plans.

of various individuals -- what, for instance, former RJR Nabisco Treasurer Dowdle personally did or did not 'firmly believe' the indentures meant"); *Purcell v. Flying Tiger Line*, No. 82-3505, at 5, 8 (S.D.N.Y. Jan. 12, 1984) (as cited in *Metro. Life* at 1515).

Finally, as to the great weight that the Bankruptcy Court and Appellees place on the testimony of Kaiser's underwriter as to "the market," the country is full of independent underwriters and independent source materials (such as the COMMENTARIES) that Appellees could have introduced to support their position. It is extremely telling that the only "market" witness they could muster was the very underwriter whose liability policy is on the line, and they apparently could not find any articles or treatises at all to support their so-called "evidence."

**B.    INTERPRETATION OF THE INDENTURE THROUGH THE FILTER OF SELF-SERVING STATEMENTS OF INTENT HAS RESULTED IN AN UNNATURAL READING OF UNAMBIGUOUS INDENTURE TERMS**

In opposition to the straightforward reading of the 1993 Indenture set forth in LDTC's Opening Brief, Appellees urge an interpretation of the 1993 Indenture that conforms to self-serving parol evidence of intent in contravention of applicable law. If accepted, this approach results in a flawed and unnatural reading of the 1993 Indenture's plain terms.

**1.    Accepting the Parol Evidence Results in a Reading of the 1993 Indenture that Renders Certain Provisions Superfluous**

As LDTC explained in its Opening Brief (at 9-10), Article Three and Article Sixteen are distinct provisions with independent purposes within the context of the 1993 Indenture as a whole. In response, Appellees advance arguments that completely ignore the basic structure and specific text of the 1993 Indenture, as well as basic rules of contract interpretation. Appellees' interpretation requires, as its very foundation, resort to and acceptance of parol evidence of what Kaiser and the professionals it hired now claim was intended but not written. Appellees argue, as they must, that despite its limited scope and specific focus, Article Three should be read broadly so as to subordinate payments on the 1993 Note Guarantees. In fact, *Appellees go so far as to argue that the Court need not even look to Article Sixteen*, despite the plain and unavoidable

conclusion that Article Sixteen explicitly controls subordination of the 1993 Note Guarantees. *See* Appellees' Br. at 18, 22 (arguing that Article Sixteen merely "confirms" Article Three) and 20 (arguing that Article Three is "independently sufficient to dispose of appellants' claims").

A major flaw in Appellees' argument that this Court need only look to Article Three in determining whether the 1993 Note Guarantees are subordinated is that it renders Article Sixteen superfluous. Such an interpretation is in clear conflict with well-settled principles of contract interpretation under New York law, which dictate that an interpretation that renders a contract provision "superfluous or meaningless . . . is not preferred and will be avoided if possible." *See Shaw Group Inc. v. Triplefine Int'l*, 322 F.3d 115, 124 (2d Cir. 2003) (citation and internal quotation marks omitted); *see also Gen. Elec. v. Compagnie Euralair S.A.*, 945 F. Supp. 527, 532-33 (S.D.N.Y. 1996) (a contract should be interpreted to make every part effective); *Trump-Equitable Fifth Ave. Co. v. H.R.H. Constr. Corp.*, 485 N.Y.S.2d 65, 67 (N.Y. App. Div. 1985), *aff'd*, 66 N.Y.2d 779 (1985) (same).

Nonetheless, Appellees attempt to wedge the 1993 Note Guarantees into Article Three (which addresses only the 1993 Notes) because Article Three's subordination language suits their arguments better than the subordination language of Article Sixteen (which applies to the 1993 Note Guarantees). As a means to accomplish this result, Appellees read the phrase "direct or indirect payments or distributions on or with respect to the Notes," as used in Section 3.01, to refer to payments on the 1993 Note Guarantees. Appellees' Br. at 20. This strained reading is incorrect for several reasons.[3]

First, this interpretation ignores the structure of the 1993 Indenture which, as noted above

---

[3] Appellees' attempt to distinguish *PMI Investment v. Rose (In re Prime Motor Inns)*, 167 B.R. 261 (Bankr. S.D. Fla. 1994), cited in LDTC's Opening Brief (at 11), is hollow. Appellees' Br. at 21-22. Appellees seek to differentiate analogous terms of the agreement in *Prime Motor* and the 1993 Indenture by selectively quoting. Contrary to Appellees' assertion (at 21) that *Prime Motor* did not concern language similar to "direct or indirect payments," the *Prime Motor* agreement similarly provided for subordination of payments "of or in connection with the Subordinated Indebtedness." *Prime Motor* at 281.

(and explained in LDTC's Opening Brief at 9-10), contains separate articles addressing the 1993 Notes and the 1993 Note Guarantees. Section 3.01 has nothing to do with payments by the Subsidiary Guarantors on the 1993 Note Guarantees, or with the relationship of such payments to any indebtedness of the Subsidiary Guarantors.

Second, Appellees disregard the fact that Section 3.01 is only an agreement by "the Company" and does not bind the Subsidiary Guarantors. *See, e.g. PMI Investment v. Rose (In re Prime Motor Inns)*, 167 B.R. 261, 283 (Bankr. S.D. Fla. 1994); *Whetstone Candy Co. v. Kraft Foods*, 351 F.3d 1067, 1075 (11th Cir. 2003) ("[T]he Settlement Agreement explicitly uses the term 'subsidiary' elsewhere in the agreement and, consequently, we should be reluctant to read this term into the 'waiver' clause. Using the words 'under, by or through' would be a cryptic method to bind the subsidiaries of Kraft NA... . If the parties had intended to bind the affiliates or subsidiaries of Kraft NA, they would have included language similar to that used [elsewhere in the agreement]...."); *Zim v. West. Publ'g Co.*, 573 F.2d 1318, 1323 (5th Cir. 1978); COMMENTARIES at 312-13 (if the intention is to bind subsidiaries, the provision should say so explicitly). If Section 3.01 were intended to be binding on the Subsidiary Guarantors, or affected payments by them, it would have said so explicitly, just as it does elsewhere in the 1993 Indenture where it binds both Kaiser and its Subsidiaries, and just as it does in Article Sixteen where it subordinates payments by Subsidiary Guarantors to Senior Indebtedness of the Subsidiary Guarantors.

Third, if the 1993 Note Guarantees were intended to be covered by Section 3.01, that section would refer to guarantees explicitly, as elsewhere in the 1993 Indenture, particularly in Article Sixteen. Appellees claim, "[t]he inclusion of 'indirect payments' 'on or with respect to the Notes' has no meaning if it does not refer to payments pursuant to the Subordinated Guarantees because the guarantees are the only likely source of the indirect payments." Appellees' Br. at 20. Yet, Appellees do not and cannot explain why, if the 1993 Note Guarantees were the "only likely source" of indirect payments, the drafters did not simply refer to them by

name. Indeed, the failure to reference the 1993 Note Guarantees by name can be construed as an indication that 1993 Note Guarantees were *not* what the drafters had in mind when that used the term "indirect payments."[4]  The plain fact of the matter is that the 1993 Indenture specifically refers to the 1993 Note Guarantees in many places; it just does *not* refer to them where Appellees need it to.  Appellees cannot now rewrite the 1993 Indenture by arguing that Kaiser and its professional intended the 1993 Indenture to mean other than what it says.

Fourth, Appellees' argument completely ignores the phrase "to the extent and in the manner hereinafter set forth" in Section 3.01.  This phrase makes clear that, whatever is being subordinated in Article Three, such subordination is *only to the extent and in the manner* set forth in the remainder of Article Three.  As is relevant here, this means Sections 3.02 and 3.03, which apply exclusively to payments made by Kaiser on the 1993 Notes and do not in any way implicate payments by the Subsidiary Guarantors on the 1993 Note Guarantees.

Appellees refer to the "X Clause" exception for distributions of securities as purported support for the subordination of the 1993 Note Guarantees.  Appellees' Br. at 31.  Specifically, Sections 3.02(a) and 16.03(a) of the 1993 Indenture contain a typical proviso that permits payments or distributions on subordinated securities under a plan of reorganization as long as the subordinated securities are not treated in the same class as the senior securities.  As relevant here, the clause does not permit "the Notes or any Guarantee to be treated . . . as part of the same class of claims as the Senior Indebtedness of the Company or any Subsidiary Guarantor."  Rather than support the conclusion that payments on the 1993 Note Guarantees are subordinated, Appellees' argument just begs the question regarding the scope of "Senior Indebtedness," which LDTC has

---

[4] Appellees wrongly assert, "nor have appellants ever explained what 'indirect payments' could refer to if not the guarantees." Appellees' Br. at 20. To the contrary, LDTC's Opening Brief (at 13) quoted *Prime Motors* for its recitation of various payments that can be made "on account of" the underlying debt but are payments "not technically made by the borrower," such as adequate protection payments or payments on a claim. *PMI Investment v. Rose (In re Prime Motor Inns)*, 167 B.R. 261, 283 (Bankr. S.D. Fla. 1994).

demonstrated does not include the Subsidiary Guarantees. In other words, it is absolutely the case that LDTC's interpretation of the 1993 Indenture will not result in the 1993 Note Guarantees being placed in the same class of claims as Senior Indebtedness of the Subsidiary Guarantors, for the simple reason that the 1994/96 Note Guarantors simply are not Senior Indebtedness of the Subsidiary Guarantors, so putting the 1993 Note Guarantees and the 1994/96 Note Guarantees in the same class would not violate the X Clause.

### 2. The Parol Evidence Forces a Strained Construction of "Senior Indebtedness"

#### a. The Notices

Critical to Appellees' flawed interpretation of the 1993 Indenture are the notices sent to the 1993 Indenture Trustee, stating Kaiser had unilaterally decided that the 1994/96 Note Guarantees should be considered "Senior Indebtedness." Again, this is an attempt to rewrite the 1993 Indenture. Appellees advance the ridiculous argument that Senior Indebtedness means *not* what it says in the 1993 Indenture, but, rather, *whatever Kaiser says it means 3 years later* and regardless of whether it violates the terms of the 1993 Indenture, so long as Kaiser eventually tells the 1993 Indenture Trustee in a document that is not publicly available and, therefore, never seen by the 1993 Noteholders. Such an interpretation would render noteholders' rights subject to the issuer's undisclosed whim and defies not only common sense, but the clear language of the 1993 Indenture. Appellees conveniently ignore that the 1993 Indenture clearly provides that for a debt to be "senior" it must *both* meet (i) the definition of "Senior Indebtedness" *and* (ii) be properly noticed. *See* 1993 Indenture § 1.01. The issuance of a notice cannot, by itself, create "Senior Indebtedness." Further, while Appellees make much of the passage of time since the notices were issued, they fail to point out that the 1993 Indenture itself required no action by the 1993 Indenture Trustee. Section 8.01 of the 1993 Indenture specifically provides that the 1993 Indenture Trustee need not investigate or contest any notice sent by the Company, and no dispute existed until the priority of the subsidiary guarantees was put in issue due to the Subsidiary

10

Guarantors' bankruptcy filing. Appellees' repeated emphasis that time passed before a dispute arose regarding subordination is disingenuous. *See* Appellees' Br. at 1, 9.

At best, the Notices (and the 1994/96 Indentures and Prospectuses) are indicative of Kaiser's one-sided, *ex post facto* views several years after the 1993 Indenture was issued, and cannot possibly be construed as an expression of the views of any of the 1993 Noteholders or their indenture trustee or indicate any "course of performance" between the parties (*see* Appellees' Br. at 42). Nor could they qualify in any way as "surrounding circumstances" to the 1993 Indenture, given that they were created years later. *See Sargent v. Halsey*, 348 N.Y.S.2d 661, 664 (N.Y. Sup.Ct. 1973) ("To interpret the meaning of a contract, at the time and place it was made, all the surrounding circumstances *at that time* necessarily throw light upon it . . . .") (emphasis added), *aff'd*, 42 A.D.2d 375 (N.Y. App. Div. 2d Dep't 1973).[5]

### b.    The Exclusions

In its Opening Brief, LDTC demonstrated that in order for the 1993 Note Guarantees to be subordinated, the underlying debt to which they relate must qualify as "Senior Indebtedness" of the Subsidiary Guarantors and, further, that the express language of the 1993 Indenture does not include upstream guarantees within the scope of "Senior Indebtedness." In response, Appellees (again showing that their focus is not on the plain and complete language of the 1993 Indenture) paraphrase the definition of "Senior Indebtedness," one of the most critical provisions in this dispute, in order to force a strained interpretation. *See* Appellees' Br. at 6.

Rather than respond to LDTC's argument head-on, Appellees claim that, since upstream guarantees are not specifically *excluded* from the definition, they *must* be included. Appellees'

---

[5] Further, if Kaiser and its underwriters made misstatements or misrepresentations when issuing the 1994/96 Notes, that is a matter for the 1994/96 Noteholders to resolve with Kaiser and the underwriters, not with the 1993 Noteholders who purchased their securities years earlier and are entitled to have their rights determined based upon the 1993 Indenture as drafted. In any event, Section 15.12 of the 1993 Indenture makes it clear that such documents cannot be used to construe the 1993 Indenture.

Br. at 16-17. As demonstrated in LDTC's Opening Brief (at 22), this stands basic rules of contract construction on their head. Indebtedness can only be "Senior Indebtedness" if it is *included* within the definition. To argue that every single example or possibility of what might not fit within the definition must be identified and stated in the 1993 Indenture, is absurd. Indeed, there is no indication in the 1993 Indenture that the exclusions listed are exhaustive (*see* 1993 Indenture § 1.01), and if Kaiser and its professionals had intended to include upstream guarantees within the definition of "Senior Indebtedness," they could have, and should have, so provided. *See In re Leasing Consultants*, 2 B.R. 165, 169 (E.D.N.Y. 1980) ("The importance of making certain that senior debt qualifies as such within the limitations provided in the subordination agreement, indenture, or other instrument creating or evidencing the subordinated debt cannot be overemphasized."). Indeed, Kaiser and its professionals did exactly that where downstream guarantees were concerned.

### c.    Clauses (ii)(A)(1) and (ii)(A)(5)

Appellees argue that clause (ii)(A)(1) of the definition of Senior Indebtedness was intended to capture both upstream and downstream guarantees. However, Appellees fail to explain why this clause does not use the word "guarantees," when that term is used dozens of times elsewhere in the 1993 Indenture, including elsewhere in the definition of "Senior Indebtedness," to clearly denote provisions that apply to guarantees. Appellees also advance the newly-minted argument that clause (ii)(A)(5), which specifically addresses downstream guarantees, was somehow intended to be both "broader and narrower" than clause (ii)(A)(1). Appellees' Br. at 16, 25-27. Appellees' argument that one provision of the 1993 Indenture is both exceedingly broad and incredibly narrow makes little sense, and is yet another indication of Appellees' tortured interpretation.

While Appellees flatly claim that clause (ii)(A)(1), which refers to indebtedness "for money borrowed," includes guarantees (Appellees' Br. at 25-26), they fail to refute LDTC's assertion that the Subsidiary Guarantors did not borrow any money -- Kaiser did. *See* JAMES E.

SPIOTTO, DEFAULTED SECURITIES: THE PRUDENT INDENTURE TRUSTEE'S GUIDE (Am. Bankers Ass'n 1990) at XVII-14 (distinguishing "money borrowed" from other debt). Accordingly, the 1994/96 Note Guarantees simply are not indebtedness of the Subsidiary Guarantors "for money borrowed." This is reinforced by the 1993 Indenture's definition of "Indebtedness," which refers in clause (a) to "all obligations of such person *for money borrowed*" and separately in clause (f) to "all Indebtedness *of others* guaranteed by such person." 1993 Indenture § 1.01 (emphasis added). If Appellees' interpretation of "for money borrowed" is correct, that clause (f) of the definition of "Indebtedness" has no purpose. Regardless, Appellees argue that indebtedness "for money borrowed" includes all guarantees because it does not specify that the person incurring Senior Indebtedness must be the same person that borrowed the money. Appellees' Br. at 25. Once again, Appellees ignore that clause (a) of the definition of "Indebtedness" does not refer to money borrowed "by such person," but there are numerous additional reasons why Appellees' interpretation is simply wrong.

First, if anyone could incur Senior Indebtedness within the scope of clause (ii)(A)(1) (and, thus, all guarantees were included within its scope), then clause (ii)(A)(5), regarding downstream guarantees, would be rendered entirely irrelevant and superfluous. Why address just downstream guarantees in clause (ii)(A)(5) if *all* guarantees were already included in clause (ii)(A)(1)? Not only is this argument illogical, it should be avoided under New York law. *See Shaw Group Inc. v. Triplefine Int'l*, 322 F.3d 115, 124 (2d Cir. 2003); *see also Gen. Elec. v. Compagnie Euralair S.A.*, 945 F. Supp. 527, 532-33 (S.D.N.Y. 1996); *Trump-Equitable Fifth Ave. Co. v. H.R.H. Constr. Corp.*, 485 N.Y.S.2d 65, 67 (N.Y. App. Div. 1985), *aff'd*, 66 N.Y.2d 779 (1985).

Second, and in a similar vein, the express language of clause (ii)(A)(5) addresses downstream guarantees only "of any indebtedness referred to in this clause (ii)(A)." If (ii)(A)(1) already included all guarantees, then the reference in clause (ii)(A)(5) to clause (ii)(A)(1) would be circular and meaningless surplusage.

Third, another well-established rule of contract construction dictates that, because clause (ii)(A)(5) specifically refers to "guarantees," that term is deemed to have been purposefully excluded from clause (ii)(A)(1). *See, e.g., John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*, 717 F.2d 664, 669 n.8 (2d Cir. 1983) ("New York law recognizes that definitive particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary."); *Excellus Health Plan, Inc. v. Serio*, 757 N.Y.S.2d 345, 347 (N.Y. App. Div. 2003) ("the expression of one thing excludes another").

Fourth, if the intention was to include guarantees in clause (ii)(A)(1), it would have been simple enough to do so by including the word "guarantee." For example, the sample definitions of "Senior Debt" set forth in the COMMENTARIES expressly use the terms "guarantees" or "guaranteed" when the intention is to include guaranteed obligations. *See* COMMENTARIES at 93-95. Closer to home, clauses (ii)(D) and (ii)(E) of the definition of "Senior Indebtedness" also support the distinction between "indebtedness for money borrowed" and "guarantee." Clause (ii)(D) refers to "any Indebtedness, obligation or guarantee described in this clause (ii)" and clause (ii)(E) similarly refers to "any such indebtedness, obligation or guarantee described in clauses (i) and (ii)." If "indebtedness for money borrowed" were intended to include guarantees, it would be superfluous for clauses (ii)(D) and (ii)(E) to refer separately to "guarantees" in addition to "indebtedness."

### d.    "Assumption" and "indebtedness" Under Clause (ii)(A)(1)

Appellees also argue that references to "assumption" of a debt in the definition of Senior Indebtedness are in fact references to guarantees. Appellees' Br. at 15. Again, Appellees ignore the indisputable fact that when the 1993 Indenture addresses guarantees (including in the definition of "Senior Indebtedness"), it uses the word "guarantee." It is simply not the case that to "guarantee" a debt is the same thing as to "assume" a debt. *See* MERRIAM-WEBSTER'S DICTIONARY OF LAW (1996) (a "guarantee" is "a pledge to pay another's debt or to perform

another's duty in case of the other's default or inadequate performance," while "to assume" means "to take over (the debts or obligations of another) as one's own"). Appellees' argument was refuted in LDTC's Opening Brief (at 18-19), which demonstrated the distinct natures of assumptions and guarantees. *See Fed. Deposit Ins. Corp. v. Prann*, 694 F. Supp. 1027, 1035 n.12 (D.P.R. 1988) (assumption of debt is a "vehicle whereby a third party, with the consent of the creditor [takes] on a preexisting debt, thus making himself a debtor while liberating the original debtor without changing the basic elements of the original contract."); *Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1211 (9th Cir. 2001) ("[B]y definition, a guarantee is a separate undertaking in which the principal obligor does not join, and a guarantee exists independent of the original obligations between the principal obligor and the oblige."); *Fehr Bros. Inc. v. Scheinman*, 121 A.D.2d 13, 15 (N.Y. App. Div. 1986).

Similarly, Appellees argue that Senior Indebtedness includes upstream guarantees by urging that the undefined term "indebtedness," as that term is used in (ii)(A)(1), must include and be broader than the defined term "Indebtedness." This entirely misses the point by taking the word "indebtedness" out of the context in which it is used in clause (ii)(A)(1) -- as part of the phrase "indebtedness of such Person for money borrowed." The key point is that "indebtedness" is followed by the limiting phrase "for money borrowed." *See* MARK B. TRESNOWSKI & GERALD T. NOWAK, THE HIGH YIELD OFFERING: AN ISSUER'S PERSPECTIVE A-9 (Merrill Corp. 2004) (describing "for borrowed money" as a limiting phrase to definition of "indebtedness"). A guarantee is not indebtedness "for money borrowed" as it is the issuer, not the guarantor, who borrowed the money. This is further supported by the definition of "Indebtedness," which separately refers to obligations of a Person "for borrowed money" (clause (a)) and "all Indebtedness of others guaranteed by such Person" (clause (f)). 1993 Indenture § 1.01.

### 3.    Acceptance of the Parol Evidence Ignores the Nature of Public Indentures

Appellees, ignoring abundant case law and scholarly commentary to the contrary, claim

that public indentures are indistinguishable from other contracts. Appellees' Br. at 33-34. As explained in detail in LDTC's Opening Brief (at 30-31), public indentures are clearly distinguishable from typical private bilateral contracts in that the noteholders do not themselves negotiate and are not parties to the indenture when it is formed. Appellees' approach fails to acknowledge this critical difference, and instead divorces interpretation of the 1993 Indenture from reality attempting to force an interpretation which wholly ignores the "surrounding circumstances" of public debt issues. Indeed, Appellees' entire argument (at 34) against the application of *contra proferentum* to ambiguous contract terms is based on the fiction that the 1993 Indenture was negotiated by the 1993 Noteholders.

LDTC's point is not that the rules are fundamentally different when interpreting public indentures compared to private contracts. Both types of contracts are subject to the same rules of construction, including that an unambiguous contract – whether public indenture or private contract – should be interpreted based on the four corners of the contract and without resort to extrinsic evidence. LDTC's point is that, with a private contract, both of the parties to the contract participated in the negotiation of the contract, and therefore there should be no presumptions when in doubt. In contrast, public noteholders do not participate at all in the negotiation of public indentures, and therefore the presumption when in doubt should be against the issuer who unilaterally drafted the indenture with its own counsel and its own underwriter.

Appellees attempt to circumvent the fact that noteholders do not participate in any way in the negotiation of a public indenture by claiming that Merrill Lynch, as lead underwriter, "represented the interests of the prospective purchasers." (Appellees' Br. at 3) (citing Deposition of Theodore Sands at 26). However, ignoring that Sands' deposition testimony was inadmissible in any event, if the testimony is to be considered, then it must be noted that Sands himself acknowledged that Merrill Lynch saw itself as investment banker *for Kaiser*, a valuable client for whom it provided financial ideas – not as a fiduciary representative owing allegiances to future holders of the 1993 Notes and 1993 Note Guarantees. *See* Deposition of Theodore Sands at 41.

C.     **THE BANKRUPTCY COURT'S CONSIDERATION OF EXTRINSIC AND PAROL EVIDENCE REQUIRES REVERSAL**

As demonstrated above, the Bankruptcy Court relied on the inadmissible deposition testimony of Kaiser's chief financial officer, investment banker and lawyer, as well as inadmissible documentary submissions, as the basis for discerning the true "intent" of the 1993 Indenture. The law, of course, requires the opposite – the court must determine the true "intent" of an unambiguous contract based on what the contract itself says, not on what some self-serving third party claims it was "intended" to say.

However, Appellees wrongly suggest that because this was a non-jury case, admission of "inadmissible" extrinsic and parol evidence is not reversible error in any event. Appellees' Br. at 47. This case clearly meets the criteria for reversal because, as demonstrated in detail throughout this Reply, (i) without the extrinsic and parol evidence, the Bankruptcy Court's decision cannot be supported and (ii) the Bankruptcy Court's erroneous interpretation of the 1993 Indenture was clearly induced by the improper extrinsic and parol evidence. *See, e.g., United States v. Local 560 of Int'l Bhd. of Teamsters*, 780 F.2d 267, 278 (3d Cir. 1985, *as amended* Feb. 3, 1986); *De Laval Turbine v. West India Indus.*, 502 F.2d 259, 264.

The Bankruptcy Court engaged in limited contract construction -- all viewed through the haze of statements of "actual intent" -- and, as even Appellees concede, came to the wrong conclusions. Appellees' Br. at 28. The only justification for the strained reading of both the Bankruptcy Court and Appellees is that Kaiser's witnesses should be able to rewrite the contract that they used to raise millions of dollars in the public markets twelve years after the fact.

## IV. CONCLUSION

The Bankruptcy Court got it wrong. First, it admitted deposition testimony and other extrinsic evidence to interpret an unambiguous contract. Second, ignoring its inadmissibility, the Bankruptcy Court relied on the deposition testimony even though it was inherently biased and unreliable, and even though LDTC had filed dozens and dozens of specific Evidentiary Objections that the court simply ignored altogether. Third, in interpreting the key provision of the 1993 Indenture – the definition of "Senior Indebtedness" – even Appellees were compelled to acknowledge that the court's fundamental premise that "Obligations" were included in clause (ii) was "a slight misreading."

Contract interpretation is a question of law subject to plenary review. Respectfully, LDTC requests that this Court ignore the Guaranty Decision, ignore the parol and extrinsic evidence, ignore Appellees' brief, and even ignore LDTC's opening and reply briefs. All this Court need do is to read the 1993 Indenture for itself, and the resolution of this dispute becomes self-evident in just a few easy steps.

1. The 1994/96 Note Guarantees are upstream guarantees issued by the Subsidiary Guarantors.

2. The definition of "Senior Indebtedness" as it applies to the Subsidiary Guarantors includes only downstream guarantees, not upstream guarantees, and "indebtedness for money borrowed" does not include guarantees of any kind.

3. Article Three of the 1993 Indenture is an agreement made by the Company, not the Subsidiary Guarantors. It applies only to payments by the Company or out of the Company's assets, not to payments made by the Subsidiary Guarantors or out of the Subsidiary Guarantors' assets. And it applies only to direct or indirect payments made on the 1993 Notes, not on the 1993 Note Guarantees.

4. Article Sixteen of the 1993 Indenture is an agreement made by the Subsidiary Guarantors. It only subordinates payments made by the Subsidiary Guarantors on the 1993 Note Guarantees, to payments made by the Subsidiary Guarantors on Senior Indebtedness of the Subsidiary Guarantors.

5. Because the 1994/96 Note Guarantees are not Senior Indebtedness of the Subsidiary Guarantors, the 1993 Note Guarantees are not subordinated to the 1994/96 Note Guarantees.

This Court should reverse the Guaranty Decision and render judgment in favor of LDTC.

Dated June 22, 2006

MONZACK AND MONACO, P.A.

_____
Francis A. Monaco (#2078)
Joseph J. Bodnar (#2512)
P.O. Box 2031
1201 North Orange Street, Suite 400
Wilmington, DE 19899-2031
Tel.     (302) 656-8162

and

BINGHAM McCUTCHEN LLP
Evan D. Flaschen (ct10660)
Gregory W. Nye (ct06028)
William C. Heuer (ct24946)
Kate K. Simon (ct23489)
One State Street
Hartford, CT  06103-3178
Tel.     (860) 240-2700

*Special Counsel to Law Debenture Trust Company
of New York*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | **Chapter  11** |
| **KAISER ALUMINUM CORP., et al.,** | **Jointly Administered** |
| **Debtors.** | **Bankruptcy Case No. 02-10429 (JKF)** |
| **LAW DEBENTURE TRUST COMPANY OF NEW YORK,** | |
| **Appellant,** | **Civil Action No. 06-00088 JJF** |
| **v.** | |
| **KAISER ALUMINUM CORP., et al.,** | |
| **Appellees.** | |
| **LIVERPOOL LIMITED PARTNERSHIP,** | |
| **Appellant,** | |
| **v.** | **Civil Action No. 06-00160 JJF** |
| | (Administratively Consolidated with 06-88 JJF) |
| **ALPART JAMAICA, INC., KAISER JAMAICA CORPORATION, KAISER ALUMINA AUSTRALIA CORPORATION, AND KAISER FINANCE CORPORATION** | |
| **Appellees.** | |

## CERTIFICATE OF SERVICE

       I, Heidi E. Sasso, certify that I am not less than 18 years of age, and that I caused service of the foregoing document to be made on June 22, 2006 upon the following parties via electronic mail and Hand Delivery or US Mail:

```
Isaac M. Pachulki            Karen C. Bifferato
K. John Shaffer              Marc J. Phillips  (#4445)
Stutman, Treister & Glatt, P.C.   Connolly Bove Lodge & Hutz, LLP
1901 Avenue of the Stars, 12th Floor   The Nemours Building
Los Angeles, California 90067   1007 North Orange Street
```

Document #: 54344

Telephone: (310) 228-5600
Facsimilie: (310) 228-5788
E-mail: kjshaffer@Stutman.com


David J. Baldwin (# 1010)
Rebecca S. Beste
Potter Anderson & Corroon LLP
1313 N. Market St. Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899-0951
Tel. (302) 984-6067
Facsimile: (302) 658-1192


Gregory M. Gordon
Daniel P. Winikka
Jones Day
2727 North Harwood St.
Dallas, TX 75201
E-mail: gmgordon@jonesday.com
E-mail: dpwinikka@jonesday.com

Daniel J. DeFranceschi
Kimberly D. Newmarch
Richards, Layton & Finger, PA
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
E-mail: defranceschi@rlf.com
E-mail: newmarch@rlf.com

George A. Davis
Diane Harvey
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
E-mail: diane.harvey@weil.com
        george.davis@weil.com

Clark T. Whitmore
Alain M. Baudry
Christina A. Smith
Maslon, Edelman, Borman & Brand, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140


Michael B. Joseph
Theodore J. Tacconelli
Ferry, Joseph & Pearce, P.A.

Wilmington, DE 19801
Telephone: (302) 658-9141
Facsimile: (302) 658-5614
E-mail: kbifferato@cblh.com

David N. Crapo
Gibbons, Del Deo, Dolan, Griffinger &
Vecchione, P.C.
One Riverfront Plaza
Newark, New Jersey 07102-5496
Telephone: (973) 596-4523
Facsimile: (973) 639-6244
E-mail: dcrapo@gibbonslaw.com

Duane D. Werb,
Jennifer H. Unhoch
Werb & Sullivan
300 Delaware Ave. - 13th Fl.
P.O. Box 25046
Wilmington, DE 19899
Telephone: (302) 652-1100
Facsimile: (302) 652-1111

Harold L. Kaplan, Esq.
Mark F. Hebbeln, Esq.
Gardner Carton & Douglas LLP
191 North Wacker Drive - Suite 3700
Chicago, IL 60606-1698
Telephone: (312) 569-1000
Facsimile: (312) 569-3000
E-mail: hkaplan@gcd.com
E-mail: mhebbeln@gcd.com

Carl N. Kunz, III, Esq.
Morris, James Hitchens & Williams LLP
222 Delaware Ave. - 10th Fl.
Wilmington, DE 19801
Telephone: (302) 888-6811
Facsimile: (302) 571-1750
E-mail: ckunz@morrisjames.com


Elizabeth J. Futrell, Esq.
Aimee M. Quirk, Esq.
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, L.L.P.
201 St. Charles Ave.
New Orleans, LA 70170
Telephone: (504) 582-8000
Facsimile: (504) 582-8011
E-mail: efutrell@joneswalker.com

      David M. Klauder

```
824 Market St. - Suite 904
Wilmington, DE  19899
Telephone:  (302) 575-1555
Facsimile:  (302) 575-1714
E-mail:  ttacconelli@ferryjoseph.com
            mjoseph@ferryjoseph.com
```

Trial Attorney
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801

Mark T Hurford
Campbell & Levine, LLC
800 King Street
Suite 300
Wilmington, DE 19801
302-426-1900
Fax : 302-426-9947
Email: mhurford@camlev.com

Sharon M Zieg
Donald Brown
Young, Conaway, Stargatt & Taylor
The Brandywine Bldg., 17th Floor
1000 West Street
PO Box 391
Wilmington, DE 19899

William P. Bowden, Esq.
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE  19899
E-mail:  wbowden@ashby-geddes.com

Marc Stephen Casarino, Esq.
White & Williams LLP
824 Market Street, Ste. 902
Wilmington, DE 19801
casarinom@whiteandwilliams.com

Under penalty of perjury, I declare that the foregoing is true and correct.


                              __/s/ Heidi E. Sasso_____
Dated:  June 22, 2006         Heidi E. Sasso