**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re:<br>KAISER ALUMINUM CORP., *et al.*,<br>　　　　　　Debtors. | )<br>)<br>)<br>) | Chapter 11<br>Jointly Administered<br>Bankruptcy Case No. 02-10429<br>(JKF) |
| LAW DEBENTURE TRUST COMPANY OF<br>NEW YORK,<br>　　　　　　Appellant,<br><br>　　　　v.<br><br>KAISER ALUMINUM CORP., *et al.*,<br><br>　　　　　　Appellees. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 06-00088 JJF |
| THE LIVERPOOL LIMITED PARTNERSHIP,<br><br>　　　　　　Appellant,<br><br>　　　　v.<br><br>ALPART JAMAICA, INC., *et al.*,<br><br>　　　　　　Appellees. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 06-00160 JJF<br>(Administratively Consolidated<br>with 06-00088 JJF) |

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

**REPLY BRIEF OF APPELLANT THE LIVERPOOL LIMITED PARTNERSHIP**

Isaac M. Pachulski, Esq.
K. John Shaffer, Esq.
STUTMAN, TREISTER & GLATT P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Tel.:　(310) 228-5785
Facsimile: (310) 228-5788

David J. Baldwin (ID No. 1010)
Laurie Selber Silverstein (ID No. 2396)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, DE 19899-0951
Tel.:　(302) 984-6000
Facsimile: (302) 658-1192

Counsel to Appellant The Liverpool Limited Partnership

# TABLE OF CONTENTS

A.   New York Law Does Not Permit The Consideration Of Extrinsic Evidence To Establish The Meaning Of Unambiguous Contractual Terms. ............................... 1

  1.   New York Law Does Not Permit Extrinsic Evidence To Be Used To "Explain" An Unambiguous Agreement ..................................................... 1

  2.   New York Law Does Not Permit Consideration Of "Course Of Performance" Evidence When The Contract Is Unambiguous .................... 4

B.   New York Law Mandates That Subordination Agreements Be Strictly Construed In Accordance With Their Express Terms ............................................... 5

C.   Article Three Of The Indenture Does Not Subordinate The 1993 Guarantees To Appellees' 1994/96 Guarantees ........................................................... 7

  1.   Section 3.01 Does Not Apply To This Dispute. ........................................ 7

  2.   Section 3.02 Does Not Apply To This Dispute. ...................................... 10

D.   The 1994/96 Guarantees Are Not "Senior Indebtedness Of The Subsidiary Guarantors." ..................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*767 Third Ave. LLC v. Orix Capital Mkts., LLC,*
    812 N.Y.S.2d 8 (N.Y. App. Div. 2006) ...................................................................... 2

*Broad v. Rockwell Int'l Corp.,*
    642 F.2d 929 (5th Cir. 1981) (en banc) ........................................................... 9, 14

*Cable Sci. Corp. v. Rochdale Vill., Inc.,*
    920 F.2d 147 (2d Cir. 1990) ..................................................................................... 3

*Chemical Bank v. First Trust,*
    710 N.E.2d 1083 (N.Y. 1999) .............................................................................. 5, 6

*Colantuno v. Aetna Ins. Co.,*
    980 F.2d 908 (3rd Cir. 1992) ................................................................................... 6

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia
Fiber Network, Inc.),*
    416 F.3d 136 (2d Cir. 2005) ................................................................................. 10

*In re Environdyne Indus., Inc.,*
    29 F.3d 301 (7th Cir. 1994) ................................................................................. 10

*Estate of Anglin v. Estate of Kelly,*
    705 N.Y.S.2d 769 (N.Y. App. Div. 2000) ............................................................... 4

*Garza v. Marine Transport Lines, Inc.,*
    861 F.2d 23 (2d Cir. 1988) ....................................................................................... 2

*HSBC Bank USA v. Branch (In re Bank of New England Corp.),*
    364 F.3d 355 (1st Cir. 2004) ................................................................................... 6

*In re PWS Holding Corp.,*
    228 F.3d 224 (3d Cir. 2000) ................................................................................. 10

*Resolution Trust Corp. v. BVS Dev., Inc.,*
    42 F.3d 1206 (9th Cir. 1994) ............................................................................. 5, 6

*Sargent v. Halsey,*
    348 N.Y.S.2d 160 (N.Y. App. Div. 1973) ............................................................... 3

*South Road Assocs., LLC v. Intn'l Bus. Machs. Corp.,*
    826 N.E.2d 806 (N.Y. 2005) ............................................................................. 2, 4

*Sozio v. Exhibitgroup/Giltspur*,
    765 N.Y.S.2d 393 (N.Y. App. Div. 2003) ................................................................. 9

*Sunrise Mall Assocs. v. Import Alley*,
    621 N.Y.S.2d 662 (N.Y. App. Div. 1995) ........................................................... 14

*Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*,
    472 N.E.2d 315 (N.Y. 1984)................................................................................. 14

*Vermont Teddy Bear Co. v. 538 Madison Realty*,
    807 N.E.2d 876 (N.Y. 2004)................................................................................... 2

*Weissman v. Sinorm Deli, Inc.*,
    669 N.E.2d 242 (N.Y. 1996)................................................................................... 5

*West, Weir & Bartel v. Mary Carter Paint Co.*,
    255 N.E.2d 709 (N.Y. 1969) .............................................................................. 2, 3

*White Rose Food v. Saleh*,
    788 N.E.2d 602 (N.Y. 2003)................................................................................... 5

*William C. Atwater & Co. v. Panama R. Co.*,
    159 N.E. 418 (N.Y. 1927)....................................................................................... 3

*William Higgins & Sons, Inc. v. State*,
    231 N.E.2d 285 (N.Y. 1967)................................................................................... 9

## OTHER AUTHORITIES

New York Jur.2d, Contracts § 223.......................................................................................2

The Liverpool Limited Partnership ("Liverpool") concurs with the Reply Brief of Appellant Law Debenture Trust Company.  Liverpool writes separately to respond briefly to some of the most significant misstatements of New York law and the 1993 Indenture's terms in Appellees' Brief.

**A.     New York Law Does Not Permit The Consideration Of Extrinsic Evidence To Establish The Meaning Of Unambiguous Contractual Terms.**

The parties concur that the relevant provisions of the 1993 Indenture are unambiguous, and the Bankruptcy Court so held.  Nonetheless, the Bankruptcy Court devoted much of its Memorandum Opinion to considering extrinsic evidence, including the one-sided testimony of the Debtors' employees and agents regarding their twelve-year-old memories of what the 1993 Indenture supposedly meant.  Appellees likewise have devoted much of their Brief to defending the Bankruptcy Court's extensive reliance on extrinsic evidence.  As set forth herein, all of Appellees' (and the Bankruptcy Court's) purported justifications for relying upon extrinsic evidence are wrong as a matter of New York law.

**1.     New York Law Does Not Permit Extrinsic Evidence To Be Used To "Explain" An Unambiguous Agreement.**

Appellees contend that extrinsic evidence may be considered to "explain" an unambiguous contract and to "put[ ] the unambiguous terms in context."  Appellees' Br. at 43, 45.  The Bankruptcy Court similarly held that it could rely upon extrinsic evidence to "explain" the 1993 Indenture's unambiguous terms.  Memorandum Op. at 16.  In so holding, the Bankruptcy Court relied upon extrinsic evidence to determine the supposed "goal," "primary objective," and motivation of the Debtors and their agents. Memorandum Op. at 19, 21, 22.  Moreover, the Bankruptcy Court considered – and included in its Opinion – testimony as to what Appellees' witness "absolutely" believed the Indenture's provisions to mean. *Id.* at 20.

1

Appellees' asserted need to "explain" unambiguous terms through extrinsic evidence is oxymoronic, at best. Appellees' argument (and the Bankruptcy Court's holding) suffer from a far greater problem, however – they are wrong as a matter of New York law. New York's highest court forbids any consideration of extrinsic evidence when the terms of an agreement are unambiguous:

\* *"circumstances extrinsic to the agreement will not be considered when the intention of the parties can be gathered from the instrument itself." West, Weir & Bartel v. Mary Carter Paint Co.*, 255 N.E.2d 709, 711-12 (N.Y. 1969);

\* *"extrinsic evidence may not be considered unless the document itself is ambiguous." South Road Assocs., LLC v. Intn'l Bus. Machs. Corp.*, 826 N.E.2d 806, 809 (N.Y. 2005); and

\* *"we look solely to the language used by the parties to discern the contract's meaning." Vermont Teddy Bear Co. v. 538 Madison Realty*, 807 N.E.2d 876, 879 (N.Y. 2004) (emphasis added in all of the foregoing).

Following these holdings, New York courts have barred the admission of parol evidence of surrounding circumstances when construing an unambiguous loan agreement. *See e.g., 767 Third Ave. LLC v. Orix Capital Mkts., LLC*, 812 N.Y.S.2d 8, 10 (N.Y. App. Div. 2006). "Since parol evidence is inadmissible absent ambiguity . . . , there is no basis to admit evidence of current industry practice or custom to construe the loan documents . . . ." *Id.* (following the New York Court of Appeals' holding in *South Road*). "[T]he *surrounding circumstances are relevant* in construction for the purpose of ascertaining the intent of the parties *only where the contract is ambiguous*." New York Jur.2d, Contracts § 223, pg 270 (1996) (emphasis added).

The Bankruptcy Court failed to cite *any* of these authorities, and instead misquoted a Second Circuit decision for the erroneous proposition that "the parol evidence rule does not prevent the introduction of extrinsic evidence." Memorandum Op. at 17 (citing *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988)). In

fact, what the Second Circuit actually held was that *"when the obligations are not clearly stated -- when they are ambiguous* -- the parol evidence rule does not prevent the introduction of extrinsic evidence." *Id.* (emphasis added to language omitted by the Bankruptcy Court). The Second Circuit's holding in *Garza* is consistent with New York law; the Bankruptcy Court's misquotation of it was not.

Appellees do no better with their own citation of precedent. Two of the cases they cite as supposedly interpreting "unambiguous" contracts were, in fact, interpreting ambiguous contracts, and on that basis the courts permitted extrinsic evidence to be considered. *See* Appellees' Br. at 43 (citing *Cable Sci. Corp. v. Rochdale Vill., Inc.*, 920 F.2d 147 (2d Cir. 1990), and *Sargent v. Halsey*, 348 N.Y.S.2d 160 (N.Y. App. Div. 1973)).[1]

Nor does the Court of Appeals' decision in *Atwater* support the introduction of extrinsic evidence in the absence of ambiguity. *See* Appellees' Br. at 43 (citing *William C. Atwater & Co. v. Panama R. Co.*, 159 N.E. 418 (N.Y. 1927)). There was no mention whatsoever of extrinsic or parol evidence in *Atwater*, and the Court of Appeals made clear that contracts must be interpreted based upon "the intention of the parties as manifested thereby" -- in other words, as manifested by the contract itself. *Id.* at 419; *see also* Liverpool's Opening Br. at 33-36 (discussing *Atwater* and its progeny). In any event, any notion that *Atwater* permits the consideration of extrinsic evidence when the terms of an agreement are clear has been soundly rejected by nearly eight decades of subsequent New York case law mandating that "circumstances extrinsic to the agreement will not be considered when the intention of the parties can be gathered from the instrument itself." *West, Weir*, 255 N.E.2d at 711-12.

---

[1]    In *Cable Sci.*, the Second Circuit held that there were "inferences drawn from the language in the proposed contract reasonably susceptible to a different meaning," and thus "genuine issues of material fact." 920 F.2d at 152. In *Sargent*, the Appellate Division held that "there are a number of ambiguities or perhaps even inconsistencies to be disposed of" in order to interpret the contract. 348 N.Y.S.2d at 162.

The Bankruptcy Court erred as a matter of New York law in considering, and relying upon, extrinsic evidence of the supposed "goal," "primary objective," and motivation of the Debtors and their agents. Memorandum Op. at 19, 21, 22. Appellees likewise err in contending that the testimony improperly considered by the Bankruptcy Court showed what the Debtors and their agents "always intended." Appellees' Br. at 44. Under New York law, testimony as to what parties' "goals," "objectives," "motivations," or "intentions" may have been a dozen years ago is both inadmissible and irrelevant in the face of an unambiguous, public indenture.

2.    **New York Law Does Not Permit Consideration Of "Course Of Performance" Evidence When The Contract Is Unambiguous.**

Appellees' further contend that "the parties' course of performance is highly relevant evidence that courts consider in construing contracts." Appellees' Br. at 41. Appellees make this argument to defend the Bankruptcy Court's reliance upon notices that were sent to an indenture trustee in 1994 and 1996 – one to three years *after* the 1993 Guarantees were issued. Appellees again are wrong as a matter of New York law.

New York's highest court held just one year ago that, when the terms of a contract are unambiguous, "extrinsic evidence such as the conduct of the parties may not be considered." *South Road*, 826 N.E. 2d at 809. This holding follows a long line of New York cases that have rejected the "doctrine of practical construction . . . in the absence of any ambiguity." *Estate of Anglin v. Estate of Kelly*, 705 N.Y.S.2d 769, 771 (N.Y. App. Div. 2000). Moreover, the 1994 and 1996 notices were never provided to creditors such as Liverpool, and they were never consented to by anyone. They are, at best, unilateral declarations of what certain agents of the Debtors may have believed a decade ago. They are irrelevant and inadmissible under New York law for purposes of construing or "explaining" unambiguous terms of a public indenture.

4

**B.    New York Law Mandates That Subordination Agreements Be Strictly
Construed In Accordance With Their Express Terms.**

Appellees contend that there is an "absence of any authority suggesting that New
York courts have adopted a rule of explicitness with respect to subordination agreements
generally." Appellees Br. at 37. Appellees are wrong again.

New York's highest court follows the rule of explicitness *"as a guiding
interpretive principle of State contract dispute resolution"* under New York law.
*Chemical Bank v. First Trust*, 710 N.E.2d 1083, 1086 (N.Y. 1999) (emphasis added).
The rule requires that subordination agreements be *"absolutely clear"* – and that they
*"explicitly* alert[ ] the subordinated creditors to the enhanced risk" – if the extent of the
subordination is to include post-bankruptcy interest. *Id.* at 1087-88. New York's highest
court recognized that this was a situation "where reliance, definiteness and predictability
are such important goals of the law itself, designed so that parties may intelligently
negotiate and order their rights and duties." *Id.* at 1086.

The rule of explicitness comports with a long tradition of New York jurisprudence
strictly construing all undertakings to make another party "whole." *See, e.g., White Rose
Food v. Saleh*, 788 N.E.2d 602, 603 (N.Y. 2003) ("A guaranty is to be *interpreted in the
strictest manner.*") (emphasis added); *Weissman v. Sinorm Deli, Inc.*, 669 N.E.2d 242,
246 (N.Y. 1996) ("When a party is under no legal duty to indemnify, a contract assuming
that obligation must be *strictly construed* to avoid reading into it a duty which the parties
did not intend to be assumed.") (emphasis added). Many other jurisdictions concur that
the "law is well settled that *rights of priority under an agreement of subordination
extend to and are limited strictly by the express terms and conditions of the agreement.*"
*Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1214 (9th Cir. 1994) (emphasis
added).[2]

---

[2]    *See also* the multiple authorities cited by Liverpool on page 16 of its Opening Brief.

5

Appellees do not even try to dispute the overwhelming weight of New York law. Rather, Appellees rely solely upon a single decision of the First Circuit that disagreed with the New York Court of Appeals' holding in *Chemical Bank*. *See* Appellees' Br. at 36 (citing *HSBC Bank USA v. Branch (In re Bank of New England Corp.)*, 364 F.3d 355 (1st Cir. 2004)). The First Circuit, however, cannot overturn principles of New York law that have been established by New York's highest court. The ***Third Circuit*** has made clear that, "when federal courts are required to interpret or apply state law, we consider and accept the decisions of the state's highest court as the ultimate authority of state law." *Colantuno v. Aetna Ins. Co.*, 980 F.2d 908, 909 (3rd Cir. 1992). Thus, while the First Circuit may be a fine place to catch a Red Sox game or to see the autumn foliage, it is not a good place to determine New York law. New York law is determined by the New York Court of Appeals, which has made clear that subordinations, guarantees, and other undertakings to make another party whole must be strictly construed and limited to their express terms.

The Bankruptcy Court turned New York's rules of strict construction on their head, holding that the 1993 Guarantees were subordinated because there was no statement in the 1993 Indenture expressly providing "that the [1993] Guarantees are to be treated on par with the Subsidiary Guarantors'" 1994/96 Guarantees. Memorandum Op. at 12. Appellees make the same error, contending that "[n]owhere does the prospectus state that the [1993] Guarantees would be *pari passu* with later-issued upstream guarantees of senior debt of KACC." Appellees' Br. at 10. There is nothing in New York law, however, that requires an explicit statement that debt is ***not*** to be subordinated. To the contrary, New York law requires ***"absolutely clear"*** language that expressly sets forth the full extent to which debt is to be subordinated. If the language of the agreement fails to identify the specific category of claims to which the debt is to be subordinated, the debt will not be subordinated to that category. Subordination is "limited strictly by the express terms and conditions of the agreement." *Resolution Trust*, 42 F.3d at 1214.

6

C.     **Article Three Of The Indenture Does Not Subordinate The 1993 Guarantees To Appellees' 1994/96 Guarantees.**

Appellees contend that Article Three of the Indenture "could not be clearer" in supposedly subordinating the 1993 Guarantees to the 1994/96 Guarantees. Appellees' Br. at 20. Appellees are wrong again. Article Three does not provide for the subordination of the 1993 Guarantees under any established standard of contractual interpretation, and certainly not under the strict construction required by New York law.

Article Three by its express terms applies only to the relative priority of debt at the parent (Company) level. Article Three does not apply to the relative priority of debt at the Subsidiary Guarantor level. As stated plainly in section 3.02:

> *It is understood that the provisions of this Article Three are and are intended solely for the purpose of defining the relative rights of the holders of the Notes, on the one hand, and the holders of Senior Indebtedness of the Company, on the other hand.*

1993 Indenture § 3.02 at 38 (emphasis added).

All parties concur that the only debt that is at issue in this dispute is at the Subsidiary Guarantor level. As discussed in Appellants' prior briefs, Article Sixteen of the Indenture governs the relative priority of debt of the Subsidiary Guarantors. *See, e.g.* Liverpool's Opening Brief at 25 & 28 (including tables contrasting the operative provisions of Article Three, which apply to "the Company" and "Senior Indebtedness of the Company," and of Article Sixteen, which apply to "the Subsidiary Guarantors" and "Senior Indebtedness of the Subsidiary Guarantors"). It is Article Sixteen, and not Article Three, that governs the extent to which the 1993 Guarantees are, and are not, subordinated. Under Article Sixteen, the 1993 Guarantees are not subordinated to the 1994/96 Guarantees.

1.     **Section 3.01 Does Not Apply To This Dispute.**

Appellees rely heavily on section 3.01 of the Indenture. Appellees' Br. at 20-21. Section 3.01, however, does not contain a single reference to the Subsidiary Guarantors,

the 1993 Guarantees, or "guarantees" of any kind.    Rather, it speaks solely of distributions on account of the Company-issued Notes, and the relative priority of such distributions to "Senior Indebtedness of the Company."    Neither the Notes nor the "Senior Indebtedness of the Company" are at issue in this dispute.

Appellees selectively quote only a portion of section 3.01 in their brief, and in so doing omit some of its most critical language.    The subordination of the Notes in section 3.01 is expressly limited "*to the extent* and *in the manner* hereinafter set forth" in the remainder of Article Three.    1993 Indenture § 3.01 at 38 (emphasis added).    Appellees replace this limitation in their Brief with a misleading set of ellipses.    *See* Appellees' Br. at 20.    The limitation, when read with the remainder of Article Three, makes clear that section 3.01 governs only the relative priority of debt at the parent level, and not the relative priority of the subsidiary guarantees that are at issue here.

In the absence of any reference to "guarantees" in section 3.01, Appellees are reduced to arguing that distributions on account of the 1993 Guarantees in the Subsidiary Guarantors' own chapter 11 cases constitute "indirect payments . . . on or with respect to the Notes."    Appellees' Br. at 20.    Appellees contend that "[t]he inclusion of 'indirect payments'" in Article Three "has no meaning if it does not refer to payments pursuant to the Subordinated Guarantees . . . ."    *Id.*    This argument, however, cannot be squared with the plain language of the 1993 Indenture.

"Guarantee" is a defined term in the Indenture, meaning specifically "the guarantee of such Subsidiary Guarantor[s] set forth in Article Sixteen."    1993 Indenture § 1.01 at 17.    The Indenture uses this defined term dozens of times, as well as the generic term "guarantee" to refer to guarantees other than the 1993 Guarantees established by Article Sixteen.    Neither "Guarantee" nor "guarantee," however, appear anywhere in section 3.01.    By contrast, parallel provisions in Article Sixteen are specifically devoted to the priority of the 1993 Guarantees, and they use the words "Guarantee" and "guarantee" repeatedly.    It defies reason to believe that the drafters of the Indenture also

8

intended section 3.01 to apply to the 1993 Guarantees, and yet could not muster enough ink to include even the generic term "guarantee" anywhere in the section.

Moreover, Appellees' contention that "indirect payments" could only mean "guarantees" is plainly wrong. There are numerous ways that a creditor can be paid other than from payments made directly by the debtor, including from proceeds of insurance, asset sales, or refinancings. Indeed, the 1993 Indenture *required* that certain asset sale proceeds be dedicated solely to the repayment of the 1993 Notes. 1993 Indenture § 15.16(b) at 64. Appellees' own Statement of Facts further acknowledges that the proceeds from the 1993 Indenture were used to refinance notes previously issued by the Company in 1989. Appellees' Br. at 3.

New York law is clear that "[a] specific provision will not be set aside in favor of a catchall clause." *William Higgins & Sons, Inc. v. State*, 231 N.E.2d 285, 286 (N.Y. 1967); *see also Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 947, 952 (5th Cir. 1981) (en banc) (a more specific provision controls over a general one "under principles of New York contract law"). Article Sixteen of the Indenture specifically addresses the relative priority of the 1993 Guarantees vis-à-vis other debt of the Subsidiary Guarantors. It unequivocally provides that the 1993 Guarantees are subordinated to – and only to – "the extent and in the manner" set forth in Article Sixteen itself. *See* 1993 Indenture § 16.02 at 104. Thus, even if the reference to "indirect payments" in Article Three could, theoretically, include guarantees in some other context, it cannot here because, under New York law, the specific references to "Guarantees" in Article Sixteen must prevail.

New York law also requires courts to interpret contracts "as a whole" and to "harmonize the terms" thereof. *Sozio v. Exhibitgroup/Giltspur*, 765 N.Y.S.2d 393 (N.Y. App. Div. 2003). Appellees' attempt to equate the term "indirect payments" in Article Three with "1993 Guarantees" is an improper end-run around the specific, detailed provisions governing the 1993 Guarantees in Article Sixteen. New York law does not permit such a misreading of the 1993 Indenture.

9

##### 2.     Section 3.02 Does Not Apply To This Dispute.

Appellees also contend that the so-called "x clause" in section 3.02 "reveal[s] the full scope of the intended subordination scheme." Appellees' Br. at 31. This contention is contrary to both the plain language of the Indenture and established Third Circuit law.

First, as set forth in Liverpool's opening brief, section 3.02 (like section 3.01) simply does not apply to determining the relative priority of the indebtedness of the Subsidiary Guarantors, including, most significantly, the relative priority of the 1993 Guarantees and the 1994/96 Guarantees. *See* Liverpool Opening Br. at 27-29. The entirety of Article Three (including section 3.02) is "intended solely for the purpose of defining the relative rights of the holders of the Notes, on the one hand, and the holders of Senior Indebtedness of the Company, on the other hand." 1993 Indenture § 3.02 at 38. The relative priority of the 1993 Guarantees and other indebtedness of the Subsidiary Guarantors (including the 1994/96 Guarantees) is governed by Article Sixteen.

Second, even if the "x clause" in section 3.02 somehow were to apply, it would not in any way subordinate the 1993 Guarantees to the 1994/96 Guarantees. The Third Circuit has held that "x clauses" do not establish subordination, but rather ***exempt*** from subordination certain types of distributions made in the course of bankruptcy cases. *See In re PWS Holding Corp.*, 228 F.3d 224, 244-45 (3d Cir. 2000); *see also Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 140 (2d Cir. 2005) (holding that the purpose of an x clause is "to exempt from subordination" certain types of distributions). As explained by the Third Circuit, "such clauses are common in bond debentures," and they eliminate the need for junior creditors to otherwise surrender their securities in a bankruptcy case when senior creditors are being paid in full. *PWS Holding*, 228 F.3d at 244 (quoting *In re Environdyne Indus., Inc.*, 29 F.3d 301, 306 (7th Cir. 1994)).

The language of section 3.02 demonstrates the limited role of the x clause. Section 3.02(b) starts with the requirement that, upon any distribution of assets or securities of the Company, "the holders of all Senior Indebtedness of the Company [*not* 'the Subsidiary Guarantors'] shall be entitled to receive payment in full" before any distributions are made on account of the Notes. 1993 Indenture § 3.02 at 37. Section 3.02(b) then contains a thirteen-line parenthetical – the x clause – limiting the preceding subordination language to permit certain distributions of junior securities on account of the 1993 Notes. *Id.* The x clause also contains its own proviso (an exception within an exception) that allows the noteholders to rely upon the x clause "only so long as such payment or distributions do not cause the Notes or any Guarantee to be treated in any case or proceeding or similar event described above as part of the same class of claims as the Senior Indebtedness of the Company or any Subsidiary Guarantor . . . . " *Id.* The "case, proceeding or similar event described above" is a bankruptcy or other liquidation of the Company, not of the Subsidiary Guarantors. Thus, the noteholders cannot avail themselves to the x clause exception if, in a bankruptcy case involving the Company, the Notes or the Guarantees were treated in the "same class" as Senior Indebtedness.

None of the provisions in the x clause have any relevance in this case. First and foremost, the 1993 Guarantees are not subordinated to Appellees' 1994/96 Guarantees, and thus Liverpool and Law Debenture have no need to avail themselves to the exception to subordination that the x clause provides. Second, even if the x clause were at issue, it would not prohibit making distributions to the holders of the 1993 Guarantees under a plan of reorganization confirmed in the Subsidiary Guarantors' separate chapter 11 cases. There is no "Senior Indebtedness of the Company" that is being satisfied in the Subsidiary Guarantors' cases, and thus there is no possibility of the 1993 Guarantees being treated in the "same class" as such Senior Indebtedness. Nor are the 1993 Guarantees being treated in the same class as any "Senior Indebtedness of the Subsidiary Guarantors," since Appellees' 1994/96 Guarantees do not qualify as "Senior Indebtedness

11

of the Subsidiary Guarantors." *See* Liverpool's Opening Br. at 12-15 and the following Section D of this Reply, *infra*.

**D.    The 1994/96 Guarantees Are Not "Senior Indebtedness Of The Subsidiary Guarantors."**

Because Article Sixteen – and not Article Three – governs the relative priority of the 1993 Guarantees and other debts of the Subsidiary Guarantors, Appellees are left with one argument – that their 1994/96 Guarantees are "Senior Indebtedness of the Subsidiary Guarantors."

Appellees admit that, in order to constitute "Senior Indebtedness of the Subsidiary Guarantors," their guarantees must fall within one of the specific categories in the 1993 Indenture's definition of "Senior Indebtedness. *See* Appellees' Br. at 25-26. Appellees further admit that the only category of "Senior Indebtedness" that refers to "guarantees" is clause (ii)(A)(5), and that clause only applies to "downstream" guarantees (thus excluding Appellees' upstream 1994/96 Guarantees). *Id.* at 26; 1993 Indenture at 28. Thus, once again, Appellees are left with trying to fit the term "guarantees" into a section of the Indenture that makes no mention whatsoever of them.

Appellees contend that their guarantees qualify as "Senior Indebtedness" under clause (ii)(A)(1) of the Indenture because they are debts for "money borrowed" that have been "assumed" by the Subsidiary Guarantors. Appellees' Br. at 26-29. Appellees base their argument on the false assertion that "assumptions" of debts and "guarantees" of debts are the same thing, and that, therefore, one may simply transpose the word "assumed" in clause (ii)(A)(1) with the word "guaranteed." Appellees' tortured reading of clause (ii)(A)(1) fails for at least three reasons.

First, a "guarantee" of a debt under New York law is not the same as an "assumption" of the debt. Liverpool cited more than a half-dozen reported New York decisions establishing this point, none of which Appellees even acknowledged exist.

12

Liverpool Opening Br. at 20-21 & n.6. One who "assumes" a debt steps into the shoes of the original debtor and becomes primarily liable for its satisfaction; one who "guarantees" a debt merely becomes secondarily liable. *Id.* This distinction has significant implications under New York law for, among other things, rights of subrogation.

Second, even if a "guarantee" could be considered a subset of the term "assume" in some other context, it cannot be in this context when New York law requires the specific references to "guarantees" throughout the 1993 Indenture to govern. *See* p. 9, *supra.* The drafters of the Indenture obviously knew what a "guarantee" was, using the term dozens of times throughout the document, including when defining the 1993 Guarantees. *See* 1993 Indenture § 1.01 at 17. Furthermore, the drafters knew how to distinguish between "assumed" indebtedness and "guaranteed" indebtedness and used the terms separately, not interchangeably. *See id.* at 25 (defining "Permitted Indebtedness" of a subsidiary to mean certain debts that have been "issued, *assumed or guaranteed* by such Subsidiary") (emphasis added);

Third, Appellees' contention that clause (ii)(A)(1) includes guarantees renders clause (ii)(A)(5) a virtually nullity. It makes no sense that the drafters of the 1993 Indenture would have carefully limited clause (ii)(A)(5) to only downstream guarantees, but then pick up all nature of guarantees (upstream and downstream) in clause (ii)(A)(1). Moreover, unlike clause (ii)(A)(5), which extends "Senior Indebtedness" status only to certain types of affiliate guarantees, clause (ii)(A)(1) contains *no* restrictions in terms of affiliation with the Debtors. Thus, while clause (ii)(A)(5) expressly limits "Senior Indebtedness" to downstream guarantees of "subsidiaries" and certain (narrowly defined) joint ventures, clause (ii)(A)(1) would, under the Appellees' construction, apply to *any* guarantee of *anyone's* debt. Thus, the narrowly crafted, specific limitations on guarantees in clause (ii)(A)(5) would be completely eviscerated by a broad, general interpretation of clause (ii)(A)(1).

13

New York law is clear that, when interpreting contracts, courts must "avoid an interpretation that would leave contractual clauses meaningless." *Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*, 472 N.E.2d 315, 318 (N.Y. 1984); *see also Sunrise Mall Assocs. v. Import Alley*, 621 N.Y.S.2d 662, 663 (N.Y. App. Div. 1995) (holding that "a court should not adopt an interpretation which would leave any provision without force and effect"). The Appellees' construction of "Senior Indebtedness" violates this rule. There simply would be no reason for the 1993 Indenture to refer expressly to *certain* types of guarantees in clause (ii)(A)(5), if virtually *all* types of guarantees were included in clause (ii)(A)(1). Thus, even if Appellees' overly broad construction of clause (ii)(A)(1) were a plausible interpretation in the abstract, it is not an acceptable interpretation under New York law. A court cannot accept what "might be a plausible construction, but for the fact that it would make meaningless the qualification to that phrase that follows immediately thereafter." *Broad,* 642 F.2d at 950.

## CONCLUSION

This Court should reverse the Bankruptcy Court's decision and conclude that the 1993 Guarantees are not subordinated to the 1994/96 Guarantees.

Respectfully submitted,

By

June 22, 2006, Wilmington, Delaware

Isaac M. Pachulski
K. John Shaffer
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 228-5600
Facsimile: (310) 228-5788

David J. Baldwin (ID No. 1010)
Laurie Selber Silverstein (ID No. 2396)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

Attorneys For The Liverpool Limited Partnership

738100

14

## CERTIFICATE OF SERVICE

I, David J. Baldwin, hereby certify that I am not less than 18 years of age, and that on this 22nd day of June, 2006, I caused to be served a copy of the foregoing **Reply Brief of Appellant The Liverpool Limited Partnership** to be delivered to the following parties on the attached Service List via First Class U. S. Mail, postage prepaid and Electronic Mail.

Under penalty of perjury, I declare that the foregoing is true and correct.

David J. Baldwin

## SERVICE LIST

Gregory M. Gordon, Esq.
Daniel P. Winikka, Esq.
Nick Bowen, Esq.
Jones Day
2727 North Harwood St.
Dallas, TX 75201
E-mail: gmgordon@jonesday.com
E-mail: dpwinikka@jonesday.com
E-mail: nbowen@jonesday.com
**(Debtors' Counsel)**

Michael B. Joseph, Esq.
Theodore J. Tacconelli, Esq.
Ferry, Joseph & Pearce, P.A.
824 Market St. - Suite 904
Wilmington, DE 19899
Telephone: (302) 575-1555
Facsimile: (302) 575-1714
E-mail: ttacconelli@ferryjoseph.com
        mjoseph@ferryjoseph.com
**(Counsel for U.S. Bank National
Association, as Indenture Trustee)**

Karen C. Bifferato, Esq.
Marc J. Phillips, Esq.
Connolly Bove Lodge & Hutz, LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
Telephone: (302) 658-9141
Facsimile: (302) 658-5614
E-mail: kbifferato@cblh.com
        mphillips@cblh.com
**(Counsel for Ad Hoc Group of Senior Note
Holders)**

Elizabeth J. Futrell, Esq.
Aimee M. Quirk, Esq.
Jones, Walker, Waechter, Poitevent, Carrère &
Denègre, L.L.P.
201 St. Charles Ave.
New Orleans, LA 70170
Telephone: (504) 582-8000
Facsimile: (504) 582-8011
E-mail: efutrell@joneswalker.com
**(Counsel for J.P. Morgan Trust Company,
National Association, Successor to Bank One
Trust Company, N.A., as Indenture Trustee)**

Clark T. Whitmore, Esq.
Alain M. Baudry, Esq.
Christina A. Smith, Esq.
Maslon, Edelman, Borman & Brand, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140
Telephone: (612) 672-8335
Facsimile: (612) 642-8335
E-mail: alain.baudry@maslon.com
        clark.whitmore@maslon.com
**(Counsel for U.S. Bank National Association, as
Indenture Trustee)**

George A. Davis, Esq.
Diane Harvey, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
E-mail: diane.harvey@weil.com
        george.davis@weil.com
**(Counsel for Ad Hoc Group of Senior Note
Holders)**

2

Harold L. Kaplan, Esq.
Mark F. Hebbeln, Esq.
Gardner Carton & Douglas LLP
191 North Wacker Drive - Suite 3700
Chicago, IL  60606-1698
Telephone:  (312) 569-1000
Facsimile:  (312) 569-3000
E-mail:  hkaplan@gcd.com
E-mail:  mhebbeln@gcd.com
**(Counsel to Deutsche Bank Trust
Company, National Association, as
Successor Trustee for 9-7/8% Notes)**

Carl N. Kunz, III, Esq.
Morris, James Hitchens & Williams LLP
222 Delaware Ave. - 10th Fl.
Wilmington, DE  19801
Telephone:  (302) 888-6811
Facsimile:  (302) 571-1750
E-mail:  ckunz@morrisjames.com
**(Counsel to Deutsche Bank Trust Company,
National Association, as Successor Trustee for 9-
7/8% Notes)**

Duane D. Werb, Esq.
Werb & Sullivan
300 Delaware Ave. - 13th Fl.
P.O. Box 25046
Wilmington, DE  19899
Telephone:  (302) 652-1100
Facsimile:  (302) 652-1111
E-mail:  dwerb@werbsullivan.com
**(Co-Counsel for Bear, Stearns & Co., Inc.,
Citadel Equity Fund Ltd. and Citadel
Credit Trading Ltd.)**

Francis A. Monaco
Joseph J. Bodnar
Monzack And Monaco, P.A.
P.O. Box 2031
1201 North Orange Street, Suite 400
Wilmington, DE 19899-2031
Telephone: (302) 656-8162
E-mail: fmonaco@monlaw.com
**(Counsel to Law Debenture Trust Company of
New York)**

Mark T. Hurford
Campbell & Levine, LLC
800 King Street
Suite 300
Wilmington, DE  19801
Telephone:  (302) 426-1900
Facsimile:  (302) 426-9947
E-mail:  mth@camlev.com
**(Counsel to Asbestos Creditors Committee)**

Sharon M. Zieg
Donald Brown
Young, Conaway, Stargatt & Taylor
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE  19899
Telephone:  (302) 571-6600
Facsimile:  (302) 576-3350
E-mail:  szieg@ycst.com
**(Counsel to Asbestos Futures Representative)**

David M. Klauder
Trial Attorney
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
Telephone:  (302) 573-6491
Facsimile:  (302) 573-6497
E-mail:  david.klauder@usdoj.gov
**(Office of the United States Trustee)**

Evans Wohlforth
David N. Crapo
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ  07102
E-mail:  Ewohlforth@gibbonslaw.com
        Dcrapo@gibbonslaw.com
**(Co-Counsel for Bear, Stearns & Co., Inc.,
Citadel Equity Fund Ltd. And Citadel Credit
Trading Ltd.)**

3

Marc S. Casarino
White & Williams LLP
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
Telephone: (302) 467-4520
E-mail: casarinom@whiteandwilliams.com
**(Counsel to ACE Insurance Company)**

William P. Bowden
Ashby & Geddes
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19899
Telephone: (302) 654-1888
E-mail: wbowden@ashby-geddes.com
**(Counsel to the Official Committee of Unsecured Creditors)**

Lisa Beckerman, Esq.
Akin Gump Strauss Hauer & Feld, L.L.P.
590 Madison Avenue
New York, NY 10022
Facsimile No.: 212-872-1002
lbeckerman@akingump.com
**(Counsel to the Official Committee of Unsecured Creditors)**

Brian A. Kilmer, Esq.
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4675
Facsimile No.: 214-969-4343
bkilmer@akingump.com
**(Counsel to the Official Committee of Unsecured Creditors)**

Daniel J. DeFranceschi, Esq.
Kimberly D. Newmarch, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
PO Box 551
Wilmington, DE 19801
defranceschi@rlf.com
newmarch@rlf.com
**(Counsel to the Debtors)**

738074

4